Sean M. Sullivan (Bar No. 254372)
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorney for Defendant/Respondent KIMBERLY MITCHELL ROHDE, erroneously named as KIMBERLY ANN ROHDE, Co-Trustee of the J. & C. Mitchell Family Trust dated May 14, 2015

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

IN RE: THE J. & C. MITCHELL FAMILY TRUST DATED MAY 14, 2015

PAMELA ANNE MITCHELL, Co-Trustee of the J. & C. Mitchell Family Trust dated May 14, 2015,

Plaintiff/Petitioner,

v.

JOHN JEFFREY MITCHELL, Co-Trustee of the J. & C. Mitchell Family Trust dated May 14, 2015, and KIMBERLY ANN ROHDE, Co-Trustee of the J. & C. Mitchell Family Trust dated May 14, 2015; and DOES 1-10,

Defendants/Respondents.

Case No. 8:26-cv-01378-MRA (RAOx)

[Removed from Orange County Superior Court Case No. 30-2026-01559743-PR-TR-CMC]

RESPONDENT KIMBERLY MITCHELL ROHDE'S OPPOSITION TO PETITIONER'S MOTION TO REMAND

Date: August 11, 2026
Time: 10:00 a.m.
Crtrm: 9B, 9th Flr.
Judge: Hon. Mónica Ramírez Almadani
Mag. Judge: Hon. Rozella A. Oliver

State Petition Filed: March 10, 2026
Removal Date: May 13, 2026
Trial Date: Not Yet Set

# TABLE OF CONTENTS

I. INTRODUCTION ... 1

II. LEGAL STANDARD ... 2

III. ARGUMENT AND AUTHORITIES ... 3

A. This Case Falls on the *Grable* Side of the Line, Not the "Federal-Defense" Side ... 3

1. Petitioner seeks relief that cannot be granted without deciding a federal question. ... 3

2. *California Shock Trauma*, *Nevada*, and *Lake* are distinguishable because federal law was not part of the plaintiffs' necessary theory in those cases. ... 5

3. *Grable* is the closest analogy. ... 7

B. The Federal Issue Is Actually Disputed and Substantial ... 8

C. Exercising Jurisdiction Here Would Not Upset The Federal-State Balance ... 10

D. The Probate Exception Does Not Bar Jurisdiction ... 11

1. The exception is narrow and does not reach every trust proceeding. ... 11

2. The state court has not taken custody or control of the trust property. ... 12

3. *Goncalves* requires analysis of the actual relief and actual control over property, not reliance on labels. ... 13

E. Petitioner's Remaining Arguments Do Not Defeat Jurisdiction ... 14

F. The Request for Fees Fails Even if the Court Disagrees on Jurisdiction ... 15

IV. CONCLUSION ... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*California Shock Trauma Air Rescue v. State Compensation Insurance Fund*, 636 F.3d 538, 543 (9th Cir. 2011) .......... 5

*City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020) .......... 8, 9

*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) .......... 9

*Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237 (9th Cir. 2017) .......... *passim*

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) .......... *passim*

*Gunn v. Minton*, 568 U.S. 251 (2013) .......... *passim*

*Lake v. Ohana Military Communities, LLC*, 14 F.4th 993 (9th Cir. 2021) .......... 2, 5, 6

*Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065-67 (9th Cir. 2008) .......... 15

*Marshall v. Marshall*, 547 U.S. 293 (2006) .......... *passim*

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) .......... 15, 16

*Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012) .......... 5, 6

*Silk v. Bond*, 65 F.4th 445 (9th Cir. 2023) .......... 11

**Federal Statutes**

26 U.S.C.
§ 6324 .................... *passim*

28 U.S.C.
§ 1331 .................... 2
§ 1441(a) .................... 2
§ 1447(c) .................... 15

**California Statutes**

California Probate Code
§ 17000 .................... 10, 13

# I. INTRODUCTION

Petitioner's motion to remand proceeds from a flawed premise: it treats the federal estate-tax issue as though it first appeared in Respondent's Answer. It did not. The issue appears in the Petition itself.

This case is not in federal court because Respondent raised a federal issue as an after-the-fact defense to an otherwise ordinary trust dispute. It is in federal court because the Petition itself asks the Court to compel an immediate distribution of trust assets notwithstanding Respondent's stated refusal to distribute while federal estate-tax liability remains unresolved. The Petition alleges that this refusal constitutes unreasonable delay and a breach of fiduciary duty, and it seeks distribution, surcharge, removal of the trustees, and appointment of a replacement fiduciary because of that refusal. Pet. ¶¶ 21–22, 27, 32–33, 35–43. A court cannot adjudicate the distribution-based allegations and requested relief without deciding the legal effect of the federal estate-tax lien and personal liability provisions on the trustees' ability and obligation to distribute.

Section 6324 does not merely supply background law. It creates a ten-year lien on the gross estate and provides that, if estate tax is not paid when due, a trustee, transferee, beneficiary, or other specified recipient of included property may be personally liable up to the value of that property. 26 U.S.C. § 6324(a)(1)–(2). The Petition asks a court to hold that Respondent acted wrongfully by declining to release property subject to that federal statutory scheme before the estate tax exposure was finally resolved. Whether that refusal was wrongful therefore depends on the meaning and operation of federal law.

That distinction matters. The Ninth Circuit has repeatedly rejected removal where federal law appears only as a possible answer to a state-law claim. But those same cases also make clear that removal under *Grable* remains available where the complaint itself makes a federal issue a necessary part of the path to relief. Here, Petitioner pleaded the trustees' federal-tax-based refusal as the challenged conduct

and made the legality of that refusal a predicate to the requested distribution-related relief.

The same is true of the probate exception. Petitioner invokes the exception as if it were a broad bar to any federal case touching a trust. It is not. The Supreme Court narrowed it in *Marshall v. Marshall*, and the Ninth Circuit has followed that narrower rule in *Goncalves*. Respondent does not ask this Court to probate or annul a will, administer a decedent's probate estate, or assume custody of property already controlled by a state court. The question presented is narrower and legal: what effect federal estate tax law has on the trustees' duties and exposure while the Petition seeks to impose liability and remove them for withholding distribution. The motion to remand should be denied.

## II. LEGAL STANDARD

A civil action may be removed if the district court would have had original jurisdiction over it. 28 U.S.C. § 1441(a). Federal-question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The removing party bears the burden of establishing jurisdiction, and removal statutes are strictly construed. *Lake v. Ohana Military Communities, LLC*, 14 F.4th 993, 1000 (9th Cir. 2021). But strict construction does not eliminate the settled category of state-law claims that arise under federal law because their adjudication necessarily requires resolution of a substantial federal issue.

Most such cases involve a cause of action created by federal law. But not all. The Supreme Court has long recognized a "special and small category" of state-law cases that arise under federal law because the state-law claim itself necessarily raises a federal issue that is actually disputed and substantial, and that may be resolved in federal court without upsetting the federal-state balance. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (*quoting Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)); *Grable*, 545 U.S. at 314.

The inquiry is therefore whether the federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. All four requirements are satisfied here.

## III. ARGUMENT AND AUTHORITIES

### A. This Case Falls on the *Grable* Side of the Line, Not the "Federal-Defense" Side

#### *1. Petitioner seeks relief that cannot be granted without deciding a federal question.*

The Petition does not merely mention federal estate-tax issues in passing. It alleges that Respondents have delayed appraisal and distribution by insisting that updated appraisals and division wait until receipt of an IRS closing letter. *See* Pet. ¶ 21. It repeats that allegation as part of the asserted breach, alleging that professional advisers believed distribution could proceed with reserves and that Respondents nevertheless refused to obtain appraisals or establish a distribution process. *Id.* ¶¶ 21–22, 27. It then asks the Court to order immediate appraisal, immediate distribution, removal of the trustees, and surcharge and damages for the delay. *Id.* ¶ 33. In other words, the Petition itself asks the Court to override a refusal to distribute that is expressly tied to unresolved federal tax exposure.

That federal exposure is concrete, not conjectural. Section 6324(a)(1) provides that, unless the estate tax is paid sooner or becomes unenforceable, the tax "shall be a lien upon the gross estate of the decedent for 10 years from the date of death." Section 6324(a)(2) further provides that, if the estate tax is not paid when due, a "transferee, trustee," beneficiary, or other specified recipient of property included in the gross estate "shall be personally liable for such tax" to the extent of the property's date-of-death value. 26 U.S.C. § 6324(a)(1)–(2). The same paragraph specifies that when covered property is transferred to a purchaser or holder of a security interest, the estate-tax lien may shift and attach to other property of the

covered recipient. *Id.* § 6324(a)(2).

The federal question is therefore not whether section 6324 categorically prohibits every distribution. It does not. The question is what the federal lien and personal-liability scheme requires or permits under the circumstances alleged, including whether an undefined reserve eliminates the trustees' statutory exposure and whether Respondent may be surcharged or removed for declining to distribute before that exposure is resolved. Those are questions of federal statutory meaning and effect.

This case therefore does not present a scenario in which federal law appears only as a response to a defense. Petitioner herself alleges that Respondent's federal-tax-based position is wrongful and uses that allegation to support compelled distribution, fiduciary liability, and removal. To grant that relief on the pleaded theory, the Court must reject Respondent's understanding of the federal lien and liability provisions and determine that those provisions did not justify the challenged withholding. The federal issue is thus embedded in Petitioner's own route to relief, even though the causes of action arise under state law.

Petitioner's alternative theories concerning access to records, property management, and trustee relations do not change that conclusion as to the distribution claim and the fiduciary and removal relief predicated on delayed distribution. Federal question jurisdiction exists if at least one pleaded claim necessarily raises the federal issue. *See Grable*, 545 U.S. at 314–15. The first cause of action expressly seeks distribution, and the Petition incorporates the tax-based withholding allegations into each cause of action. Pet. ¶¶ 29, 34, 39. The record-access and property-management allegations may support other requested relief, but they do not provide an alternative, nonfederal basis for adjudicating whether the tax-based withholding itself was wrongful or for compelling the immediate distribution demanded in the first cause of action.

2. <u>California Shock Trauma, Nevada, *and* Lake *are distinguishable because federal law was not part of the plaintiffs' necessary theory in those cases.*</u>

Petitioner relies on the general rule that a federal defense does not create federal-question jurisdiction. That rule is correct. But even cases applying it, which Petitioner does not cite in her motion, are materially different from this one.

In *California Shock Trauma Air Rescue v. State Compensation Insurance Fund*, 636 F.3d 538, 543 (9th Cir. 2011), the Ninth Circuit rejected federal jurisdiction because the plaintiff's claims were "based entirely on California causes of action," and the federal preemption issue was "merely a potential response to a defense.". The plaintiff expected the defendants to invoke a California reimbursement regulation and then planned to answer that defense with federal preemption. *Id.* at 541–43. The federal issue therefore entered only through a defense and a reply to that defense. The court emphasized that the complaint in *Grable* itself presented the federal issue on its face because the state-law title claim was expressly premised on the IRS's alleged failure to give notice "as defined by federal law." *Id.* at 543 (*quoting Grable*, 545 U.S. at 314–15).

That distinction helps Respondent, not Petitioner. Here, as in *Grable*, the Petition itself puts the federal issue on the face of the pleaded dispute. Petitioner alleges that Respondents have withheld distribution pending federal estate tax resolution, alleges that the withholding is improper, and seeks liability and removal because of it. This is not a case where a federal issue emerges only after a state law claim is complete. The federal law disagreement is the pleaded reason the distribution dispute exists.

The same is true of *Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012). There, Nevada alleged state deceptive-practices claims that could be proved through several theories of misconduct, only some of which referenced federal programs or federal statutes. The Ninth Circuit held that federal jurisdiction did not

attach because the complaint raised "exclusively state law claims," the federal issues were not "pivotal," and the claims could be supported by "alternative and independent theories." *Id.* at 674–75. Nevada could prove deceptive practices through promises, foreclosure conduct, and misrepresentations unrelated to federal law. *Id.* at 675. The federal references were therefore unnecessary to any claim.

That is not this case. Petitioner has made the tax-based withholding itself the challenged act. A court may resolve unrelated record-access or management allegations without construing section 6324, but it cannot hold that Respondent wrongfully delayed distribution for the reason alleged, or surcharge and remove her on that basis, without determining the legal effect of section 6324. Unlike *Nevada*, the federal issue is not one of several interchangeable examples of wrongdoing. It is the legal dispute underlying the challenged refusal to distribute.

Nor does *Lake v. Ohana Military Communities, LLC*, require remand. There, military families asserted eleven state-law claims concerning pesticide contamination in privatized military housing. 14 F.4th at 998–1000. The defendants argued that the claims implicated federal interests because the housing was located on a military installation and operated under a federal program. The Ninth Circuit rejected that theory because Hawaii law remained state law, Congress had permitted concurrent state jurisdiction, and the defendants had not identified a federal legal issue that the state-law claims necessarily required the court to decide. *Id.* at 1002–05. Mere federal context was not enough.

Here, by contrast, Respondent does not rely on federal context, federal ownership, or a generalized federal interest. She identifies a specific federal statute, a specific lien, a specific personal-liability rule, and a pleaded request to impose liability for conduct taken because of that statutory exposure. The difference is between a claim that happens to arise in a federally connected setting and a claim that requires adjudication of the meaning and effect of a federal statute.

### 3. <u>*Grable* is the closest analogy.</u>

*Grable* is the best fit. There, the quiet title claim arose under state law, but removal was proper because the claim depended on the meaning of a federal notice statute, and the federal issue was at the heart of the claim. 545 U.S. at 314–15. The plaintiff's superior-title theory required it to prove that the IRS had failed to give notice "as defined by federal law." *Id.* at 314–15. The meaning of the federal statute was the only disputed legal or factual issue, the Government had a direct interest in the operation of its tax collection system, and federal jurisdiction over the rare state title case presenting such an issue would have only a "microscopic effect" on the federal-state division of labor. *Id.* at 315.

This case likewise turns on the meaning and effect of a federal tax statute. Petitioner seeks an order compelling distribution. Pet. ¶ 33. Respondent contends that distribution while estate-tax liability remains unresolved may impair the federal lien, transfer property to persons within section 6324(a)(2), and leave trustees or recipients exposed to personal liability if tax remains unpaid when due. That is a disputed question of federal tax law. And, as in *Grable*, it is not peripheral. It is the legal question that must be answered before the Court may treat the tax-based refusal as wrongful and impose the distribution-related relief requested on that theory. *See Gunn*, 568 U.S. at 260–61; *Grable*, 545 U.S. at 315.

Petitioner argues that advisers believed an "appropriate reserve" would permit distribution. Pet. ¶¶ 21–22, 27. But that allegation confirms, rather than eliminates, the federal issue. The Petition does not identify the amount, legal basis, or statutory effect of such a reserve. Section 6324 contains no general reserve safe harbor. Whether a reserve would adequately address the federal lien and personal-liability regime, and whether trustees may be compelled to accept that risk, therefore requires application of federal law rather than acceptance of a conclusory professional opinion.

**B. The Federal Issue Is Actually Disputed and Substantial**

There is no real dispute about whether the federal issue is actually disputed. The parties' positions are opposite. Petitioner says distribution should proceed now. Respondent says federal law creates continuing lien and personal-liability risks that justify withholding distribution until those risks are resolved or adequately protected against.

The real fight is over substantiality. Petitioner argues there is none because no active IRS audit or proceeding is pending and because the trustees could simply distribute with "appropriate reserves." Pet. ¶¶ 21-22, 27.

Neither premise resolves substantiality. Section 6324(a)(1) imposes the estate-tax lien by operation of law, without requiring an audit or collection action. And section 6324(a)(2) prescribes personal liability if estate tax is not paid when due. The absence of a pending enforcement proceeding therefore does not erase the federal statutory consequences that govern fiduciary decisions now. Nor does the phrase "appropriate reserves" answer whether a reserve protects trustees or recipients from the lien and liability rules. Those propositions are disputed applications of federal law, not jurisdictional facts that may simply be assumed in Petitioner's favor.

The Ninth Circuit's decision in *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), confirms the right framework. Consistent with *Gunn*, substantiality asks whether the federal issue matters to "the federal system as a whole," not merely whether it matters to the parties. *Gunn*, 568 U.S. at 260; *see City of Oakland*, 969 F.3d at 905–07. The court found no substantial federal issue because the nuisance claim did not require interpretation of a federal statute, did not challenge the validity of a federal enactment, and depended on factual determinations rather than a clean legal question. *City of Oakland,* 969 F.3d at 906–07. The defendants had identified a variety of broad "federal interests," such as energy, national security, and foreign policy, but no federal "legal issue" that would control numerous cases. *Id*.

This case is different in precisely the ways *City of Oakland* said matter. It does

require interpretation and application of an enacted federal tax liability regime. It presents a specific legal question about the scope of fiduciary exposure imposed by the Internal Revenue Code.

The issue also concerns the administration of the federal estate-tax collection system, not merely a hypothetical federal issue arising in a backward-looking malpractice action. Section 6324 preserves federal collection remedies through an automatic lien and personal-liability provisions that remain operative after death. A ruling that trustees may be compelled, on pain of surcharge or removal, to distribute federally encumbered property before the estate tax exposure is resolved bears directly on the operation of that statutory collection framework. That is materially closer to the Government's direct interest in the tax collection mechanism recognized in *Grable* than to the generalized policy interests rejected in *City of Oakland*. *See Grable*, 545 U.S. at 315; *Gunn*, 568 U.S. at 260–61.

To be sure, *Gunn* teaches that it is not enough for a federal issue to matter to the immediate parties alone. 568 U.S. at 260–62. But that is not Respondent's argument. Respondent's point is narrower: where a state-court order would declare withholding undertaken because of federal lien and personal-liability exposure wrongful, and compel disposition of the affected property, interpretation of that federal statutory scheme is substantial in the *Grable* sense.

Nor is the issue merely "fact-bound and situation-specific." *See City of Oakland*, 969 F.3d at 907; *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–701 (2006) (describing as insufficient to establish arising-under jurisdiction those federal issues that are merely "fact-bound and situation-specific"); *Gunn*, 568 U.S. at 262 (same). The relevant facts—deaths, estate property, unresolved estate-tax exposure, and requested distribution—frame the dispute. But the disputed legal question is the effect of section 6324 on fiduciaries asked to distribute before final resolution of the estate tax obligation. That is a federal legal issue capable of recurring across estate and trust administrations.

**C. Exercising Jurisdiction Here Would Not Upset The Federal-State Balance**

This case also satisfies the fourth *Gunn* factor. Exercising jurisdiction would not convert the federal courts into probate tribunals or invite a flood of trust disputes into federal court. The Supreme Court in *Grable* stressed the "microscopic effect" that jurisdiction would have on the federal-state division of labor because only a rare category of state law cases would turn on the meaning of a federal tax statute in the relevant way. 545 U.S. at 315 (noting that jurisdiction "will portend only a microscopic effect on the federal-state division of labor").

The same is true here. Routine trust disputes will remain in state court. Federal jurisdiction would arise only where the petitioner's own theory places the operation of a specific federal tax lien or liability provision at the center of requested trust relief. Most petitions to compel accounting, appraisal, distribution, or trustee removal do not do so. That is the sort of "special and small" case *Grable* contemplated, not a broad invitation to federalize probate practice. *See also Gunn*, 568 U.S. at 258.

The absence of a federal cause of action under section 6324 does not dictate a different result. *Grable* rejected a categorical rule requiring a federal cause of action and treated its absence as relevant primarily to whether federal jurisdiction would shift a large class of state cases into federal court. 545 U.S. at 317–18. Recognizing jurisdiction here would not do that. The combination of a petition expressly challenging tax-based withholding, an automatic federal lien, potential personal liability, and requested compelled distribution is uncommon and self-limiting.

Petitioner's reliance on California Probate Code section 17000 likewise does not alter the federal-state balance. Section 17000 allocates proceedings among California courts; it cannot withdraw jurisdiction otherwise conferred on a federal court. *Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (citing *McClellan v. Carland*, 217 U.S. 268, 281 (1910), for the proposition that federal jurisdiction "'cannot be

impaired by subsequent state legislation creating courts of probate'"). The governing limitation is the federal probate exception, not California's choice to assign internal trust proceedings to a particular department of its superior court.

### D. The Probate Exception Does Not Bar Jurisdiction

#### 1. *The exception is narrow and does not reach every trust proceeding.*

Petitioner also overreads the probate exception. The Supreme Court in *Marshall v. Marshall* rejected the broad version of the exception and described it as one of "distinctly limited scope." 547 U.S. at 310–11 (*quoting Markham v. Allen*, 326 U.S. 490, 494 (1946)). As *Marshall* explained, the probate exception reserves to state probate courts only the probate or annulment of a will, the administration of a decedent's estate, and precludes a federal court from endeavoring to dispose of property in the custody of a state probate court. *Id*. at 311–12. Outside those confines, the exception "does not bar federal courts from adjudicating matters" otherwise within federal jurisdiction. *Id.* at 312.

The Ninth Circuit adopted that narrower formulation in *Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237 (9th Cir. 2017), explaining that after *Marshall*, the probate exception does not apply unless the federal court is endeavoring to "(1) probate or annul a will, (2) administer a decedent's estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court." *Id.* at 1252 (*quoting Three Keys Ltd. v. SR Util. Holding Co*., 540 F.3d 220, 227 (3d Cir. 2008)). Recent Ninth Circuit authority further confirms that the probate exception's application is not self-evident merely because a dispute concerns estate assets. *See Silk v. Bond*, 65 F.4th 445, 450–52 (9th Cir. 2023) (reversing dismissal under the probate exception and holding that valuing estate property to adjudicate an in personam claim did not amount to estate administration).

The first two categories do not apply. This action concerns an inter vivos family trust following the settlors' deaths. Petitioner does not ask the Court to admit or invalidate a will or to administer a probate estate. The Trust may function as a will

substitute, but *Marshall* did not create an exception for every dispute involving a post-death trust. Its formulation is tied to the prohibited acts: probating a will, administering a decedent's estate, or disposing of property already in state-court custody.

2. *The state court has not taken custody or control of the trust property.*

The third category also does not apply. Petitioner identifies no order by which the Orange County Superior Court seized, impounded, deposited, placed in receivership, or otherwise assumed custody or control of any Trust asset. The Petition was removed before the state court adjudicated the merits. The Trust property remained held and managed by the trustees; it was not deposited with the court or placed under the control of a court-appointed fiduciary. Mere filing of a proceeding concerning trust affairs is not the same as state-court possession of the res. *See Goncalves*, 865 F.3d at 1253–56 (examining whether the state court had actually exercised control over the relevant proceeds, rather than treating the California Probate Code label as dispositive).

The question presented is narrower: what rights and obligations arise under the federal estate-tax lien and liability provisions while Petitioner seeks to impose personal and fiduciary consequences for withholding distribution? That is a legal question about fiduciary obligations under federal tax law. Resolving it does not require this Court to manage assets, supervise appraisals, direct leases, or otherwise perform the work of trust administration.

Petitioner responds that the relief she seeks is quintessentially probate in character: distribution, trustee removal, and appointment of a fiduciary. *See* Motion at p. 7. Those remedies make the probate exception issue serious, but they do not permit the Court to skip *Marshall*'s actual test. The exception does not turn on whether a remedy is commonly available in probate court. *Marshall* expressly rejected the Ninth Circuit's former rule excluding matters that would "ordinarily be

decided by a probate court." 547 U.S. at 299–300, 311–12. The question is whether the federal court would probate a will, administer a decedent's estate, or dispose of property in a state court's custody. *Goncalves*, 865 F.3d at 1252. None of those conditions is established merely because the Petition requests remedies authorized by the Probate Code.

California Probate Code section 17000 does not establish state-court custody either. It gives the California superior court "exclusive jurisdiction" among state tribunals over proceedings concerning the internal affairs of trusts. Cal. Prob. Code § 17000(a). But a state statute cannot enlarge the federal probate exception or defeat federal jurisdiction otherwise conferred. *Marshall*, 547 U.S. at 314.

*3.* <u>Goncalves *requires analysis of the actual relief and actual control over property, not reliance on labels.*</u>

*Goncalves* is instructive because it rejected categorical reasoning based on the California Probate Code and instead examined the nature of the proceeding and the court's actual control over property. The Ninth Circuit held that placement of minor-settlement provisions in the Probate Code did not make the proceeding "probate." 865 F.3d at 1252–53. It then examined whether the state court had taken possession, custody, or control of the disputed settlement proceeds and distinguished a determination of lien rights from enforcement against the res. *Id*. at 1253–56.

The same analysis applies here. The state court did not possess or control the Trust assets when the action was removed. Respondent does not seek seizure of those assets. And the federal issue concerns the legal consequences of the federal estate tax scheme before the Court may impose liability for withholding. Deciding that question does not itself transfer, marshal, sell, or distribute any asset.

To the extent the Court concludes that a particular form of final relief would cross *Marshall*'s line, that conclusion would define the permissible remedy; it would not establish that the Court lacks jurisdiction to adjudicate every claim and issue in the action. *Marshall* itself permitted an in personam tort judgment that affected the

parties' economic interests in an estate because the federal court did not probate a will or reach property in state-court custody. 547 U.S. at 312. Here, Petitioner also seeks surcharge and other personal relief against Respondents. Pet. ¶¶ 35–43. At minimum, those in personam claims do not become nonjusticiable merely because Petitioner joined them with requests concerning trust administration.

**E. Petitioner's Remaining Arguments Do Not Defeat Jurisdiction**

Petitioner emphasizes that no IRS audit or collection action is pending. Motion at pp. 5–6. But section 6324(a)(1)'s lien arises automatically and lasts ten years unless the estate tax is paid sooner or becomes unenforceable. The statute does not condition the lien on an audit, assessment proceeding, or collection suit. 26 U.S.C. § 6324(a)(1). Likewise, the personal-liability provision turns on unpaid estate tax and receipt or possession of included property, not on whether the IRS has already commenced litigation. 26 U.S.C. § 6324(a)(2). The absence of an active IRS case therefore does not eliminate the federal statutory issue.

Petitioner also relies on the Trust's CPA and former counsel allegedly advising that distribution could proceed with reserves. Pet. ¶¶ 21–22, 27. Those alleged opinions may be evidence on the merits, but they do not settle federal law or defeat jurisdiction. Professional advice cannot create a statutory safe harbor that Congress did not enact, and the Petition does not allege that the IRS released the lien, issued a discharge, fixed the liability, or approved any reserve.

Finally, Respondent's assertion of 26 U.S.C. § 6324 as an affirmative defense does not transform the jurisdictional theory into one based only on a defense. The well-pleaded-complaint inquiry looks to the Petition, and the Petition expressly alleges the tax-based withholding as wrongful conduct. A defendant does not forfeit embedded-federal-question jurisdiction by also preserving the same federal issue as a merits defense. The jurisdictional point is not that Respondent pleaded 26 U.S.C. § 6324; it is that Petitioner pleaded claims whose distribution-based theory requires the court to determine whether the justification grounded in 26 U.S.C. § 6324 was

legally sufficient.

**F. The Request for Fees Fails Even if the Court Disagrees on Jurisdiction**

Even if the Court were to remand, fees under 28 U.S.C. § 1447(c) would be unwarranted. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal; conversely, when an objectively reasonable basis exists, fees should be denied. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *see also Lussier v. Dollar Tree Stores, Inc*., 518 F.3d 1062, 1065-67 (9th Cir. 2008) (applying *Martin* and affirming denial of fees where removing party had objectively reasonable basis for removal and its arguments for removal "were not otherwise clearly foreclosed.")

Respondent plainly had an objectively reasonable basis for removal here. The removal was grounded in *Grable*, *Gunn*, and a specific federal tax statute that the Petition itself put in issue by seeking to compel distribution over a federally based objection, as well as the Ninth Circuit authorities and reasoning set forth herein.

No controlling authority addresses this precise posture: a removed California trust petition that expressly challenges withholding based on § 6324 and seeks to surcharge and remove trustees for that withholding. *Grable* establishes that a disputed federal tax issue embedded in a state-law claim may support removal. 545 U.S. at 314–15. *Marshall* and *Goncalves* reject broad formulations of the probate exception and require attention to the actual relief and custody of property. *Marshall*, 547 U.S. at 311–14; *Goncalves*, 865 F.3d at 1252–56. Those authorities provide an objectively reasonable, even if ultimately unsuccessful, basis for removal.

The manner of removal also confirms its reasonableness. Respondent timely removed, identified the federal statute and the embedded issue, obtained the served co-respondent's consent, and filed a substantive jurisdictional explanation. This was not a bare invocation of federal law. Under *Martin*, disagreement with the removal

theory is not enough; the theory must lack an objectively reasonable basis. 546 U.S. at 141. Petitioner cannot make that showing.

## IV. CONCLUSION

Petitioner's motion presses broad rules at a level of generality too high for this case. Yes, a federal defense is not enough to remove a case to federal court when the case otherwise rests on state law. Yes, the probate exception remains real. But neither principle resolves this motion on these facts.

The right question is narrower: whether a petition that pleads federal-tax-based withholding as actionable misconduct and seeks compelled distribution, surcharge, and trustee removal on that basis necessarily raises a disputed and substantial federal issue, and whether resolving that issue requires this Court to probate a will, administer a decedent's probate estate, or dispose of property already in state-court custody. The answer to both questions favors federal jurisdiction.

The Motion to Remand should be denied. If the Court concludes otherwise, it should deny Petitioner's request for fees because Respondent had an objectively reasonable basis for removal.

DATED: July 21, 2026

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: /s/ Sean M. Sullivan
Sean M. Sullivan

Attorney for Respondent/Defendant Kimberly Mitchell Rohde, erroneously named as Kimberly Ann Rohde, Co-Trustee of the J. & C. Mitchell Family Trust dated May 14, 2015

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Respondent Kimberly Mitchell Rohde, certifies that this brief contains 5,042 words, excluding the portions exempted by Local Rule 11-6.1, and complies with the word limit of Local Rule 11-6.1.

Date: July 21, 2026

*/s/Sean M. Sullivan*
Sean M. Sullivan